■ TENGTU INTERNATIONAL CORP., Appellant, v PAK KWAN CHEUNG et al., Respondents. [805 NYS2d 71]—

Order and judgment (one paper), Supreme Court, New York County (Emily Jane Goodman, J.), entered on or about April 1, 2005, which denied and dismissed petitioner's application to stay arbitration, unanimously reversed, on the law, with costs, and the stay of arbitration granted.

Under the 1999 Consultant Agreement, respondent Cheung was named to a five-year term as chief executive officer (CEO) and chairman of appellant Tengtu's board of directors with incidental provisions for past, future and incentive compensation; respondent Comadex, a company controlled by Cheung was to receive three million shares of Tengtu's stock. The Agreement provided that in the event that Tengtu elected to terminate the Agreement prior to the five-year term for any reason other than cause Tengtu "shall continue to make all payments and provide all benefits due under this Agreement for the full remaining term . . . as if there had been no termination, or $150,000, whichever is greater." The Agreement contained an arbitration clause which provided for arbitration of "[a]ny dispute arising under or in connection with this Agreement." Upon Cheung's termination as chairman and CEO and removal as a director in 2002, respondents commenced arbitra-

tion proceedings. After a two-year abeyance for settlement discussions, Tengtu answered the arbitration demand, asserting counterclaims against Cheung for breach of fiduciary duty and breach of the duty of loyalty, and counterclaims against Cheung and Comadex for fraud, unjust enrichment and an accounting. Tengtu alleged that the Consultant Agreement was the result of a secret quid pro quo side agreement between Cheung and a board member who served as chairman of Tengtu's executive compensation committee, and that in exchange for this member's support of the Consultant Agreement, Cheung allegedly promised him a cut of the benefits that Cheung would receive under the Consultant Agreement. Tengtu further alleged that Cheung failed to disclose that he purchased shares of Tengtu's stock through offshore companies that he allegedly owns.

Shortly thereafter, Comadex commenced a federal action in the Western District of Washington against Tengtu and eight of its directors (*Comadex Industries, Ltd. v Ballard et al.*, No. CV04-1711) seeking an order compelling them to remove the restrictive legend from the three million shares of Tengtu stock issued as per the Consulting Agreement. To that end, Comadex alleged, inter alia, that Tengtu's board of directors had wrongfully and illegally removed Cheung from the board and that Tengtu and certain of its directors had made false and misleading statements in Securities and Exchange Commission (SEC) filings concerning the adequacy of Tengtu's systems of internal controls, systems of risk management, and fiscal controls so as to prevent Comadex from selling the shares and to otherwise undermine its value.

Five days later, respondents submitted their answer to Tengtu's counterclaims in the arbitration proceeding, asserting, inter alia, that in the event that Tengtu's counterclaims were allowed, the amount awarded thereunder should be reduced by setoff. Respondents' answer also included 5½ pages of allegations regarding the valuation of the Tengtu shares.

During a temporary stay of arbitration, respondents notified the arbitration panel, on January 27, 2005, that they were withdrawing their setoff defense.

The motion court's finding that the claims interposed in the federal action are separate and distinct from the arbitrable claims was error. It is clear, given the broad arbitration clause, that the claims made in the federal action are arbitrable; indeed, the claims asserted in the federal action embrace the same issues as those asserted in the arbitration (*Great N. Assoc. v Continental Cas. Co.*, 192 AD2d 976, 979 [1993]). In the federal action, respondents filed a complaint and amended complaint,

opposed a motion to dismiss for lack of personal jurisdiction, failure to serve a complaint, and improper venue, and also moved for partial summary judgment. While every foray into the courthouse does not effect a waiver of the right to arbitrate, in our view, respondents' conduct reflects a positive and unequivocal election to litigate in the federal action and to forgo their arbitration rights (*compare Johanson Resources v LaVallee*, 271 AD2d 832, 835 [2000]).

Respondents' subsequent withdrawal of their setoff claims in the arbitration proceeding cannot avoid or rescind their waiver of the right to arbitration. Once waived, the right to arbitrate cannot be regained (*Rusch Factors v Fairview Mfg. Co.*, 34 AD2d 635 [1970]; *see also Sherrill v Grayco Bldrs.*, 64 NY2d 261, 274 [1985]). In any event, as correctly pointed out by Tengtu, it is the affirmative use of the judicial process to prosecute claims also encompassed by an arbitration agreement that results in a waiver of the right to arbitration. The result does not change where, as here, the federal complaint names additional defendants who are not subject to arbitration and includes nonarbitrable claims (*see Matter of Hawthorne Dev. Assoc. v Gribin*, 128 AD2d 874 [1987]). We also note that the withdrawal of the setoff claims was a nullity since it violated the terms of the temporary stay.

We have considered and rejected respondents' remaining contentions. Concur—Buckley, P.J., Tom, Andrias, Sullivan and Malone, JJ.